UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTON & BASSETT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ORGANIC SPICES, INC.,<br><br>Defendant. | Case No. 15-cv-01849-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 66 |

Pending before the Court is the motion for summary judgment, Dkt. No. 66 ("Mot."), filed on October 28, 2016 by Defendant and Counterclaimant Organic Spices, Inc. ("Spicely"). Plaintiff and Counterclaim-Defendant Morton Bassett, L.P. ("Morton") timely filed its opposition on November 18, 2016.[1] Dkt. No. 70 ("Opp."). Spicely filed its reply on November 28, 2016. Dkt. No. 73 ("Reply"). The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons described below, the Court **DENIES** the motion.

**I.  FACTS**

Morton has been producing and selling premium spices since 1986. Dkt. No. 70-3, Gothelf Decl. ¶ 2. The company sells its products throughout the United States in a wide array of grocery stores, supermarkets, and retails outlets. *Id.* ¶¶ 2, 13. The company employs two similar versions of its asserted trade dress. *Id.* ¶¶ 5-6; Dkt. No. 62 ("SAC") ¶ 14. The original product line consists of the following elements: (1) "[a] contemporary, clean round clear glass container through which the enclosed product is easily seen;" (2) "[a] solid color plastic cap;" (3) "[o]paque white (and occasionally colored) lettering in a clean, modern style font either decaled or embossed

---

[1] "Plaintiff Morton Bassett L.P. [was] erroneously identified in prior pleadings in this action as 'Morton & Bassett LLC.'" Dkt. No. 62 ("SAC").

onto the clear glass container with no opaque labelling;" (4) "[t]he name of the spice is displayed in all capital letters;" and (5) "[t]he name of the spice is displayed in the largest letters [of the asserted trade dress] for added emphasis." Gothelf Decl. ¶ 5; SAC ¶ 14. The "100% organic" product line shares these elements, and contains the following additional elements: (1) "[t]he top of the glass container has a white (or occasionally black) decaled or embossed band with the words "100% ORGANIC" in all capital, reverse lettering;" and (2) "[a] circle is displayed in the middle of the bottle."[2] Gothelf Decl. ¶ 6; SAC ¶ 14. This case poses the issue of whether Spicely, a competing spice seller, has infringed on Morton's asserted trade dress.[3]

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper."). If a court finds that there is no genuine

---

[2] The circle contains lettering, which is not part of the asserted trade dress. *See* SAC ¶ 14. This lettering includes "M&B" in somewhat larger font than the name of the spice. *See id.*
[3] Additional facts are stated, as relevant, in the "Discussion" section of this order.

1  dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. *See* Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that any reasonable trier of fact would have to find in its favor. *See Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the moving party. *Celotex*, 477 U.S. at 323.

**III. DISCUSSION**

Morton asserted five claims in the operative complaint. SAC ¶¶ 36-58. Later, Morton

abandoned two of these claims. *See* Opp. at 21 n.8 ("Morton Bassett . . . is abandoning its claims for infringement under Cal. Bus. & Prof. Code § 14245 (Second Claim) and federal false advertising (Fifth Claim)."). Therefore, only three claims are still at issue: trade dress and false designation of origin in violation of 15 U.S.C. § 1125(A) (First Claim); common-law passing off and unfair competition (Third Claim); and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Fourth Claim). *See* SAC ¶¶ 36-38, 43-50. The Court addresses these claims below.

### A. Trade Dress and False Designation of Origin

Section 43(a) of the Lanham Act proscribes infringement of an unregistered trade dress.[4] *Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 529 U.S. 205, 209 (2000); *see also* 15 U.S.C. § 1125(a). Trade dress is "the 'total image of a product,' including features such as size, shape, color, texture, and graphics." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2016) (quoting *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 n. 3 (9th Cir. 1998)). The elements of a trade dress claim are "(1) that [the plaintiff's] claimed dress is nonfunctional; (2) that [the plaintiff's] claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Id.* at 1127 n.1 (internal quotation marks omitted). In assessing these elements, the court must "focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *See id.* at 1130 (emphasis in original) (quoting *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1256 (9th Cir. Ariz. 2001)).

Here, Spicely argues that Morton does not have protectable trade dress because its package design is functional, generic, and has not acquired secondary meaning. Mot. at 11-21

#### i. Functionality

"[T]rade dress protection cannot be asserted for any functional features of a product." *Millennium Labs*, 817 F.3d at 1126.[5] However, the Ninth Circuit has cautioned that "functional

---

[4] Morton has admitted that its trade dress is not federally registered. *See* Opp. at 7.
[5] "This limitation reflects a balance of considerations affecting the competitive process and

4

elements that are separately unprotectable can be protected together as part of a trade dress." *Id.* at 1130 (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987)). Functionality is typically "an intensely factual issue." *See Millennium Labs*, 817 F.3d at 1119. The Ninth Circuit uses a two-step test to determine whether trade dress is functional. *Id.* at 1128-31.

### a. Step One

Step One is guided by the Supreme Court's teaching "that 'a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *See id.* at 1127-28 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 850 n. 10 (1982)). Under Step One, courts assess four functionality factors:

> (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture. No one factor is dispositive; all should be weighed collectively.

*Id.* at 1130 (quoting *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)). If the claimed trade dress is held to be functional under Step One, the inquiry ceases. *Id.* at 1129.

As to the first factor, whether the design yields a utilitarian advantage, a reasonable jury might conclude that the trade dress is "merely aesthetic, not functional," *see Millennium Labs*, 817 F.3d at 1130, because it does not affect the "actual benefit" (i.e., spices) that consumers seek to purchase, *see Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1174 (C.D. Cal. 2010) (finding that "taken together," design elements of Fiji's water bottle, such as shape of bottle and lettering, raindrop, and hibiscus flower used on label, were "purely aesthetic").[6] Just as the court in *Fiji Water* found that "[c]onsumers do not buy bottled water

---

consumer benefit. Although Congress does not want consumers to be confused about a product's source, it also does not want to restrict the availability and use of functional features that enhance the utility of the product." *Millennium Labs.*, 817 F.3d at 1127.

[6] The procedural posture of *Fiji Water* was a motion for preliminary injunction as opposed to a motion for summary judgment, such that the burden on the movant was different than the one applicable here. Nonetheless, the Court finds the conceptual analysis in *Fiji Water* to be persuasive.

5

based on how its packaging looks, but rather based on how the water tastes or how much it costs," *see id.* at 1174, a reasonable jury might conclude here that consumers buy spices based not upon their packaging, but rather upon their quality and price. At a minimum, Morton has raised a dispute of material fact as to whether its trade dress, instead of impacting the product's quality or price, or constituting what customers actually seek to buy, has instead functioned to identify that a particular entity (i.e., Morton) was the product's source. *See id.* at 1173 (citing *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009 (9th Cir. 1999)). For example, Morton's CEO since 1986 states in his declaration that the trade dress has been "one of the most important features of our brand," and has attached advertising, marketing, and media materials emphasizing the trade dress. *See* Gothelf Decl. ¶¶ 11, 14; *id.* Ex. A (company webpage, nearly half of which is comprised of color photo of three containers); *id.* Ex. B (historical promotional materials, with conspicuous color images of containers); *id.* Ex. C (color photographs from trade show, displaying large spice racks showcasing containers, as well as promotional banner featuring very large color image of four containers); *id.* Ex. D (media materials with various color photographs of the containers); *id.* Ex. E (business card, nearly half covered by color image of four containers), *id.* Ex. F (promotional materials with many prominent color images of containers).

As to the second factor, while Spicely contends that Morton has presented no evidence that alternative designs are available, *see* Mot. at 14, Morton has actually raised a dispute of material fact as to this factor. For example, its Vice President of Business Development, who is responsible for "knowing competitive products" in the spice industry, states in her declaration that no other competitor besides Spicely uses the combination of elements used in Morton's packaging, and attaches color photographs of competitive spice products. *See* Dkt. No. 70-4, Campbell Springfield Decl. ¶¶ 4, 9; *id.* Ex. B. A reasonable jury could conceivably conclude that there are commercially feasible alternatives to Morton's trade tress, such that protecting its trade dress would not hamper competition. *See Disc Golf*, 158 F.3d at 1008; *see also Fiji Water*, 741 F. Supp. 2d 1174 ("Since competitors routinely use alternative designs in packaging their bottled water products, protecting the particular combination of elements of the FIJI packaging will not hinder competition in the bottled water industry.").

As to the third factor, the parties do not dispute that Morton uses advertising slogans such as "Clearly What Spices Should Be" and "Our Commitment to Quality is Clear," but they disagree on whether that amounts to touting the utilitarian advantages of Morton's asserted trade dress. *Compare* Mot. at 14-15 *with* Opp. at 11. Spicely asserts that Morton "admits that the characteristics of its trade dress directly influenced its marketing strategy." *See* Mot. at 14 (citing SAC ¶ 17 ("Playing on the look of elements of its Morton Bassett Trade Dress, Plaintiff has adopted and used slogans including 'Clearly What Spices Should Be,' and 'Our Commitment to Quality is Clear.'")). In contrast, Morton argues that its advertising slogans "tout the high-quality spices inside the bottles," *see* Mot. at 11; Gothelf Decl. ¶ 22, "not . . . the overall aesthetic of the combination of elements that comprise the Morton Basset Trade Dress," *see id.*; Gothelf Decl. ¶ 21 ("Morton Bassett does not, and has never used advertisements or marketing materials which has [sic] encouraged consumers to by [sic] Morton Bassett's spices *because* of the packaging." (emphasis in original)). Morton's asserted trade dress is composed of not only the clear glass container and labeling, which apparently relate to the use of "clear" or "clearly" in Morton's advertising, but also to the particular font, capitalization, and size of the lettering, which apparently do not, and the Court may not analyze the container and label in isolation from the lettering. *See Millennium Labs*, 817 F.3d at 1126 (declaring that functional elements may be collectively protected as part of the trade dress, even if not individually protectable). Viewing the inferences reasonably drawn from the record in the light most favorable to Morton, the Court finds that it is possible that a reasonable jury could find that Morton's advertising did not tout the utilitarian advantages of its trade dress.

As to the fourth factor, there is a dispute of material fact regarding whether the asserted trade dress results from a comparatively simple or inexpensive method of manufacture. Spicely argues that the broad availability of the stock jar used by Morton implies "an inexpensive method of manufacture relative to other strong dress examples such as McCormack's [sic] trade dress registration for its distinctive, custom jar." *See* Mot. at 15 (citing Kanach Decl., Exs. 18-20 (three trademark registrations of McCormick & Co., Inc.)). However, this argument misses the mark by focusing only on the clear glass container used by Morton, while ignoring the four other elements

7

of the asserted trade dress. *See Millennium Labs*, 817 F.3d at 1130 (requiring assessment not of individual elements, but rather the "overall visual impression that the combination and arrangement of those elements create." (quoting *Clicks Billiards*, 251 F.3d 1256)). Moreover, Morton's CEO, who created and approved the asserted trade dress, states that he "did not consider cost as a factor in selecting any of the elements of the Morton Bassett Trade Dress" and that he eschewed "many less expensive alternative glass containers, caps [and] labels." *See* Gothelf Decl. ¶¶ 7-8.

Weighing the four *Disc Golf* factors collectively, the Court finds that summary judgment is not appropriate at Step One. The Court therefore moves on to Step Two. *See Millennium Labs*, 817 F.3d at 1131.

### b. Step Two

Step Two is guided by the Supreme Court's holding that "a functional feature is one the 'exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" *See Millennium Labs*, 817 F.3d at 1128 (alterations omitted) (quoting *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 165 (1995)). Thus, at Step Two, the Ninth Circuit inquires "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Id.* at 1131 (quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006)).

Summary judgment is not warranted at Step Two. Spicely has failed either to put forward evidence negating an essential element of Morton's claim or to demonstrate that Morton "does not have enough evidence of an essential element to carry its ultimate burden of persuasive at trial." *See Nissan Fire*, 210 F.3d at 1102. Spicely's argument regarding Step Two cites only one piece of evidence: an exhibit showing that the Mason jar was patented in 1858.[7] *See* Mot. at 16-17 (citing Kanach Decl., Ex. 21). Spicely's argument regarding Step Two also fails to identify *any* evidentiary deficiency, much less one necessarily precluding Morton from prevailing at trial. *See*

---

[7] Spicely fails to identify its argument as relating to Step Two, or to cite the two-step functionality test from *Millennium Labs*. Nonetheless, Spicely cites the relevant rule from *Au-Tomotive Gold*, which the Ninth Circuit relied upon at Step Two in *Millennium Labs*. *See* Mot. at 16.

8

*id.* Since Spicely, the movant, did not meet its initial burden of production, Morton, the non-movant, had no obligation to produce anything, even though it will bear the ultimate burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1102-03.[8]

For the foregoing reasons, summary judgment is not appropriate on the basis of functionality.

### ii. Distinctiveness

The second element of a trade dress claim is "that [the plaintiff's] claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning." *Millennium Labs.*, 817 F.3d at 1127 n.1. "If a . . . [trade] dress is inherently distinctive[,] it need not be shown to also have a secondary meaning." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993).

Trade dress, like a trademark, "is inherently distinctive if its intrinsic nature serves to identify a particular source." *See Wal-Mart*, 529 U.S. at 210 (internal alterations omitted). The Supreme Court has distinguished product-packaging trade dress from product-design trade dress, finding that the former can be inherently distinctive, while the latter cannot. *Compare id.* at 212 ("The attribution of inherent distinctiveness to certain categories of . . . product packaging derives from the fact that the very purpose of . . . encasing [a product] in a distinctive packaging, is most often to identify the source of the product.") *with id.* at 213 ("In the case of product design . . . , we think consumer predisposition to equate the feature with the source does not exist.") *and id.* at 216 ("[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning.")

Trademarks are often classified in the following categories of generally increasing distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks,

---

[8] Morton should not take false solace in surviving summary judgment at Step Two. Remarkably, the Opposition fails to address Step Two or to cite either *Millennium Labs* or the relevant rule from *Au-Tomotive Gold*. *See* Opp. at 7-14. Morton should not expect a similar approach to be successful at trial.

because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* at 768. At the other end of the spectrum, "generic" marks—which "refer to the genus of which the particular product is a species"—cannot be protected. *Id.* at 768 (internal quotations marks, brackets, and citations omitted). In between these two poles, "descriptive" marks, while not inherently distinctive, may nonetheless "acquire" the requisite distinctiveness for protection (i.e., "secondary meaning"). *Id.* at 769. In other words, suggestive, arbitrary, and fanciful marks "meet the distinctiveness element automatically"; generic marks "never meet the distinctiveness element"; and descriptive marks only meet the distinctiveness element if they "acquire" distinctiveness (i.e., secondary meaning). *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) (summarizing *Two Pesos*, 505 U.S. at 768-69).

The Supreme Court has not held, however, that this spectrum of categories created for word marks applies to product-packaging trade dress, which typically involves shapes and images. Driven by the increasing recognition that the word-mark spectrum of distinctiveness may not be helpful for assessing the inherent distinctiveness of non-word trade dress, courts now widely follow the test of inherent distinctiveness for non-verbal symbols adopted in *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977) ("*Seabrook* test"). *See* J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 8:13 (4th ed.) (updated March 2017) (collecting cases applying the *Seabrook* test). In addition, the Ninth Circuit's Manual of Model Civil Jury Instructions suggests that, in product-packaging trade dress cases, "the court consider the propriety of giving an instruction using the test in *Seabrook*" instead of engaging in likely necessary modification of the model jury instructions based upon the *Two Pesos* analysis. *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* 311 (2007 ed.) (updated March 2017). The Court agrees that "the *Seabrook* test is by far the preferable test to classify inherently distinctive trade dress in packaging and containers." *See* McCarthy, *supra* § 8:13 (describing the test's advantages).[9]

---

[9] The parties agree that the *Seabrook* test applies. *Compare* Mot. at 19 *with* Opp. at 16.

Applying the *Seabrook* test to product-packaging trade dress claims, courts typically analyze "whether (1) the design or shape is a common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation." *See, e.g.*, *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1004 (C.D. Cal. 2011) (internal quotation marks omitted); *see also* McCarthy, *supra* § 8:13 (same).[10] Ultimately, these various factors all boil down to asking "whether the design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin—a trademark." *See* McCarthy, *supra* § 8:13; *see also I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 40 (1st Cir. 1998) (quoting this analysis with approval); *Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726-GW ASX, 2014 WL 4365736, at *7 (C.D. Cal. Aug. 28, 2014) (same).

Although Spicely cites the *Seabrook* test, it fails to actually analyze any of the factors. *See* Mot. at 20. In fact, Spicely's analysis regarding inherent distinctiveness includes only three sentences, none of which is adequate to meet its initial burden at summary judgment. *See id.* First, Spicely argues that "as discussed, M&B's trade dress does not have the hallmarks of distinctiveness, since its use of a non-custom, stock bottle and use of other basic, non-descript features are generic and commonplace, particularly within the spice industry." Mot. at 20. Without any citation, however, the Court cannot ascertain which "discuss[ion]" Spicely is referencing, or even which specific elements of the asserted trade dress Spicely considers "generic and commonplace," apart from the "stock bottle." Moreover, the use of a stock bottle alone does not constitute evidence negating an essential element of Morton's claim, *see Nissan Fire*, 210 F.3d at 1102, given that the asserted trade dress has five different elements, and the relevant inquiry is

---

[10] The fourth factor of the *Seabrook* test ("whether the design is capable of creating a commercial impression distinct from the accompanying words") relates to the distinct issue of whether a design is actually a registerable mark separate from any nearby words, and therefore should not be part of the inherent distinctiveness test. *See* McCarthy, *supra* § 8:13 n.9. This conclusion is supported by courts that follow McCarthy in omitting the fourth factor, *see, e.g.*, *Mattel*, 782 F. Supp. 2d at 1004, and by courts that state the fourth factor but omit it from their actual analysis of inherent distinctiveness, *see, e.g.*, *Fiji Water*, 741 F. Supp. 2d at 1176-77.

the total visual impression created by the combination and arrangement of these elements, *see Millennium Labs*, 817 F.3d at 1130. Second, Spicely contends that Morton "cannot demonstrate on the evidence in the record that its product packaging is inherently distinctive based on the elements claimed to comprise its trade dress." *See* Mot. at 20. However, the movant, Spicely, cannot force the non-movant, Morton, to proffer evidence supporting its claim simply by asserting that the non-movant lacks such evidence. *See Nissan Fire*, 210 F.3d at 1105. Third, Spicely contends that Morton's CEO "admitted M&B's spice jar packaging is not recognized by its customers." *See* Mot. at 20 (citing Kanach Decl. Ex 1 at 66:12-15, 66:19-25, 71:18-23). This contention, however, is contradicted by the cited testimony. In fact, Morton's CEO testified that while members of the public often do not recognize the brand's *name*, they *do* recognize the brand's *packaging*, purchasing the jar based upon its "look and feel." *See* Kanach Decl. Ex 1 at 71:18-23. Since Spicely, as the movant, has failed to carry its initial burden of production, Morton, as the non-movant, is not required to produce any evidence supporting the inherent distinctiveness prong. Summary judgment is not appropriate on the inherent distinctiveness prong, and therefore, the Court does not proceed to the secondary meaning prong. *See Int'l Jensen*, 4 F.3d at 824 (if inherent distinctiveness is shown, secondary meaning need also not be shown).

Finally, the Court addresses Spicely's argument that Morton "cannot demonstrate that its trade dress is nongeneric." *See* Mot. at 17 (capitalization omitted). As a threshold matter, the Court observes that this argument relies upon the *Two Pesos* test for distinctiveness. *See id.* at 17 (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth*, Inc., 58 F.3d 27, 31 (2d Cir. 1995) ("We evaluate the distinctiveness of trade dresses according to the [*Two Pesos* test]")); *see also* McCarthy, *supra* § 8:6.50 (describing *Milstein* as the lead case among those that "have held that a package or product shape can lack protection as being 'generic' if the trade dress is defined as a mere product theme or style of doing business or is such a hackneyed or common design that it cannot identify any particular source"). As noted above, the Court agrees with the trend of adopting the *Seabrook* test instead of the *Two Pesos* test in trade dress cases involving product packaging and containers. However, the Ninth Circuit, albeit nearly twenty years ago and only in

12

passing, appeared to hold that a non-genericness defense may be asserted to trade dress claims. *See Kendall-Jackson*, 150 F.3d at 1051 (declaring that one of the possible conclusions that the jury could draw from the evidence presented "would support a finding that the trade dress was *generic or descriptive and therefore nondistinctive*" (emphasis added)). Therefore, the Court addresses this argument as well.

Since Spicely raised the defense of genericness in its counterclaims, *see* Dkt. No. 64 at 7, Morton "has the burden of proof to show that the mark is valid," *see Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). However, the "usual rules pertaining to the grant of summary judgments" still apply. *See id.* at 929. Therefore, Spicely, as the party moving for summary judgment, still must "either produce evidence negating an essential element of [Morton's] claim or show that [Morton] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *See Nissan Fire*, 210 F.3d at 1102.[11] Here, Spicely's arguments regarding genericness contain no record citations whatsoever. *See* Mot. at 18-19. Consequently, the only issue presented is whether Spicely has shown that Morton lacks evidence of an essential element to carry its burden of persuasion at trial. Spicely has not, as explained below.

Spicely argues that "[b]ased upon M&B's own allegations and admissions, on the face of the FAC, M&B's asserted 'trade dress' is indisputably generic and unprotectable as a matter of law . . . ." *See id.* at 19. Specifically, Spicely argues that "[r]ather than disputing this allegation of genericness, M&B acknowledged in the SAC that third parties['] use and marketing of clear glass spice jars is an indication of gourmet quality, rather than as [sic] a source identifier for M&B." *See id.* at 18 (citing SAC ¶ 52). However, the relevant portion of the SAC merely states, "By and through Plaintiff's use and marketing of its high quality spices in the Morton Bassett Trade Dress, and the use of marketing by third party spice producers of glass jars for their high quality spices,

---

[11] The case relied upon by Spicely, *see* Mot. at 18, is entirely consistent, given that there, the defendant had already produced evidence of genericness, *see Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) ("It does not appear that [the plaintiff] has offered evidence of nongenericness sufficient to rebut even the fairly modest evidence of genericness offered by [the defendant].").

13

the relevant public has come to understand and expect that the spices contained in of [sic] glass jars for spices are high quality, that is, 'gourmet' in nature." *See* SAC ¶ 52. This language does not constitute an admission that the asserted trade dress is not a source identifier.[12]

Spicely also contends that the asserted trade dress is generic under the Ninth Circuit's holding in *Kendall-Jackson*, 150 F.3d 1042. *See* Mot. at 18-19. In that case, the plaintiff "sued [the defendant] for featuring on its wine labels a multicolored grape leaf design that allegedly resembles a similarly colored leaf design that [the plaintiff] uses on its wine labels (the trademark claim) and for using wine bottles that mimic the overall appearance of [the plaintiff's] wine bottles (the trade dress claim)." *See id.* at 1044. However, Spicely exclusively analogizes to the Ninth Circuit's reasoning in upholding the grant of summary judgment on the *trademark* claim, which assessed genericness with relation only to the grape-leaf design on the plaintiff's wine labels. *See* Mot. at 18 (citing *Kendall*-Jackson, 150 F.3d at 1049). The Ninth Circuit declared that the distinctiveness finding as to the grape-leaf design did not necessarily have any bearing on the distinctiveness of the trade dress, given that "trade dress must be analyzed as a whole." *See Kendall-Jackson*, 150 F.3d at 1051. Moreover, Spicely's position is not supported by the far more relevant portion of the opinion, which affirmed the district court's denial of the plaintiff's motion for judgment as a matter of law on the distinctiveness of its trade dress. *See id.* at 1049-51. There, the Ninth Circuit declared that *one* of the alternative conclusions that a reasonable jury could reach based upon the available evidence was that the "combination of an exposed cork, a rounded flange, and a neck label" communicated to wine consumers "what the product is or at least the characteristic of the product, namely that it is wine from California." *See id.* at 1050-51. "This conclusion would support a finding that the trade dress was *generic* or descriptive and therefore nondistinctive." *Id.* at 1051 (emphasis added). Accordingly, the Ninth Circuit found that "there were *genuine issues of fact* about whether [the plaintiff's] trade dress was distinctive" such that "[t]he distict court properly let the jury decide [this] issue[]." *Id.* (emphasis added). Therefore, far from requiring summary judgment here, the most factually and legally analogous portion of the

---

[12] Morton objects to Spicely's mischaracterization of the complaint. *See* Opp. at 14 n.7.

14

*Kendall-Jackson* opinion weighs toward letting the jury decide the issue of distinctiveness here.

Lastly, Spicely argues that "[a] round bottle, plastic cap, description of the product, white lettering on a clear label (or other colors when necessary), and capital letters for the name of the product . . . are all indisputably generic as individual elements—and when taken as a whole." *See* Mot. at 19. However, this statement is irrelevant insofar as it analyzes the elements individually and merely conclusory with relation to the total visual impression created by their combination and arrangement. *See Millennium Labs*, 817 F.3d at 1130. Therefore, the statement does not show that Morton will be unable to carry its burden at trial of demonstrating that its trade dress is not either "defined as a mere product theme or style of doing business or is such a hackneyed or common design that it cannot identify any particular source." *See* McCarthy, *supra* § 8:6.50. Since Spicely failed to carry its initial burden of production for summary judgment on grounds of genericness, Morton was not required to produce evidence in response, despite having the burden of persuasion at trial. *See Nissan Fire*, 210 F.3d at 1102-03.

For the foregoing reasons, summary judgment is not warranted on the distinctiveness prong of Morton's trade dress claim.

### iii. Likelihood of Consumer Confusion

Spicely's motion makes no arguments regarding the likelihood of confusion prong. *See* Mot. at 11-21 (arguing that asserted trade dress is "functional, generic, and has not acquired secondary meaning"). Therefore, Spicely has not met the movant's initial burden of showing the absence of a genuine issue of material fact as to this prong. *See Celotex*, 477 U.S. at 323. Summary judgment is therefore inappropriate as to all three prongs of Morton's trade dress claim.[13]

### B. Common-Law Passing Off and Unfair Competition, and Violation of the UCL

Spicely argues that Morton's federal trade dress claim preempts its Third Claim for common-law passing off and unfair competition, and its Fourth Claim for violation of the UCL.[14]

---

[13] The various evidentiary objections advanced by Spicely, *see* Reply at 5-10, are **DENIED AS MOOT** because the Court did not rely on any of the evidence in question.

[14] Spicely also argues that Morton's Third and Fourth Claims must be dismissed to the extent that the Court grants Spicely's motion for summary judgment as to Morton's trade dress claim. *See*

15

*See* Mot. at 23. Spicely's motion cites only one case to support this argument. *See id.* (citing *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 975 (9th Cir. 1987), *overruled on other grounds by Fogery v. Fantasy*, 510 U.S. 517 (1994)). However, *Madera* applies the two-part test for preemption established by Section 301 of the Copyright Act. *See* 820 F.2d at 976-77; *see also* 17 U.S.C. § 301. Therefore, *Madera* provides no basis for finding that the Lanham Act preempts Morton's Third and Fourth Claims.

The Lanham Act does not have a broad preemptive impact. *See Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980)); *see also* 3 McCarthy, *supra* § 22:2 ("In general, federal and state trademark and unfair competition law can coexist and cooperate without conflict.") In *Golden Door*, the Ninth Circuit abandoned its prior dicta that "[t]he Lanham Act has pre-empted the field of trademark law and controls" and instead agreed with the Third Circuit that "[i]f state law would permit confusing or deceptive trademarks to operate, infringing on the guarantee of exclusive use to federal trademark holders, then the state law would, under the Supremacy Clause, be invalid." *See* 646 F.2d at 352 (quoting *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir. 1969) and *Mariniello v. Shell Oil*, 511 F.2d 853, 858 (3d Cir. 1975), respectively). *Golden Door* has been understood to mean that "[t]he Lanham Act . . . only preempts state laws which would provide less protection than the Lanham Act, and thus would permit federal trademarks to be infringed." *See Kerzner Int'l Ltd. v. Monarch Casino & Resort, Inc.*, 675 F. Supp. 2d 1029, 1049 (D. Nev. 2009); *see also Garcia v. Coleman*, No. C-07-2279 EMC, 2008 WL 4166854, at *15 (N.D. Cal. Sept. 8, 2008) (citing *Golden Door* for the principle that "there is no preemption by the Lanham Act so long as the state law does not conflict with the federal law"). Most recently, the Ninth Circuit held that, since the Lanham Act does not expressly preempt state law, and does not occupy the field of trademark protection, a state law can be preempted by the Lanham Act only if it conflicts with the Lanham Act. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015), *cert. denied sub nom. Int'l Franchise Ass'n, Inc. v. City of Seattle, Wash.*, 136 S. Ct. 1838 (2016).

---

Mot. at 24. Since the Court denies the motion as to Morton's trade dress, the Court does not address this argument.

United States District Court
Northern District of California

Here, there appears to be no basis for preemption. With respect to Morton's Third Claim, "[t]he common law tort of unfair competition [or] . . . 'passing off' of one's goods as those of another . . . developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *See Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992). And Morton's Fourth Claim appears to be based upon the "unlawful" prong of the UCL, *see* SAC ¶ 48 (stating that Spicely's "wrongful" acts have violated the UCL), which "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable," *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted);[15] *see also Kelley Blue Book v. Car-Smarts, Inc.,* 802 F. Supp. 278, 289 (C.D. Cal. 1992) (stating that the Lanham Act and the UCL are "substantially congruent"). In short, neither of the claims at issue here would conflict with or limit the protections of the Lanham Act. Therefore, they are not preempted. *See also Keep a Breast Found. v. Seven Grp.*, No. 11-CV-00570 BEN WMC, 2011 WL 3240756, at *3-4 (S.D. Cal. July 28, 2011) (declining to find that the plaintiff's UCL claim was preempted by the Lanham Act).

## IV. CONCLUSION

For the foregoing reasons, Spicely's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Dated: April 21, 2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[15] The UCL also proscribes "unfair" and "fraudulent" practices. *See* Cal. Bus. Prof. Code. § 17200; *Cal-Tech*, 20 Cal. 4th at 180.

17