UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTON & BASSETT, LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>ORGANIC SPICES, INC.,<br><br>    Defendant. | Case No. 15-cv-01849-HSG<br><br>**ORDER REGARDING PRIORITY ISSUES DISCUSSED AT CASE MANAGEMENT CONFERENCE** |

On August 8, 2017, the Court held a further case management conference with Plaintiff Morton Bassett L.P. ("Morton") and Defendant Organic Spices, Inc. ("Spicely") to discuss certain issues regarding the upcoming jury trial. *See generally* Dkt. No. 145 (transcript). During the proceedings, Morton's counsel stated that resolution of two issues would clarify the parties' meet-and-confer discussions in anticipation of trial. *See id.* at 21:16–22:6. Both issues relate to Morton's claim for trade dress infringement and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(A). *See* Dkt. No. 62 ("SAC") ¶¶ 36–38. The first issue is whether Morton's trade dress is "a product design, packaging design, . . . both . . . or . . . ambiguous." *See* Joint Pretrial Conference Statement, Dkt. No. 122 ("JPCS") at 7–10. The second issue is whether the concept of "genericness" is applicable. *See id.* at 5–7.

**I. TYPE OF TRADE DRESS**

Relying on *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000), Spicely argues that this case does not unambiguously involve product-packaging trade dress. *See* JPCS at 8–10. In *Wal-Mart*, the Supreme Court distinguished product-packaging trade dress from product-design trade dress, finding that the former can be inherently distinctive, while the latter cannot. *Compare id.* at 212 ("The attribution of inherent distinctiveness to certain categories of word marks and product packaging derives from the fact that the very purpose of a particular word to a

product, or encasing it in a distinctive packaging, is most often to identify the source of the product.") *with id.* at 213 ("In the case of product design . . . , we think consumer predisposition to equate the feature with the source does not exist.") *and id.* at 216 ("[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning.") Moreover, the Court recognized that, on the margin, it could be difficult to distinguish product-packaging from product-design trade dress, and directed courts to classify ambiguous trade dress as the latter:

> There will indeed be some hard cases at the margin: a classic glass Coca–Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former. . . . To the extent there are close cases, we believe that courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning.

*Id.* at 215.

Spicely quotes this cautionary guidance from Justice Scalia, but fails to demonstrate that the instant case is a "close" case involving "ambiguous trade dress." *See* JPCS at 8–10. Spicely has presented no evidence that dissuades the Court from the commonsense conclusion that Morton's customers purchase its products to consume the spices contained inside the bottles, as opposed to for some other purpose, such as collecting the bottles. *See Wal-Mart*, 529 U.S. at 215; J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 8:12.50 (4th ed.) (updated June 2017) (describing the court decisions since *Wal-Mart* as reflecting "a common sense approach in classifying trade dress as either product or package, asking what is the primary product that the buyer is purchasing"); *see also Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1176 (C.D. Cal. 2010) (finding that FIJI's bottle and label for mineral water constituted product-packaging trade dress). Spicely argues that "[t]he first of element of the claimed trade dress refers to the product as part of the package," *see id.* at 9, but that element merely indicates that the product is visible through the clear glass container, *see* SAC ¶ 14 ("A contemporary, clean round clear glass container through which the enclosed product is easily seen."). This unremarkable fact does not preclude the straightforward conclusion that this case

2

involves product-packaging trade dress. *See Fiji*, 741 F. Supp. 2d at 1171, 1176 (classifying FIJI's asserted trade dress as product packaging under *Wal-Mart*, despite the bottle including a "transparent outer front label"). Likewise, the Court is unpersuaded by Spicely's argument that the use of the word "product" (as opposed to "packaging") by Morton's expert on consumer confusion has legal significance as to whether Morton's trade dress is classified as product packaging or product design. *See* JPCS at 9–10. And while Spicely claims to also sell empty spice jars, that is not relevant to whether the nature of Morton's asserted trade dress is ambiguous. *See id.* at 10. Accordingly, the Court holds that this case unambiguously involves product-packaging trade dress.[1]

## II. GENERICNESS

The present disagreement regarding the applicability of genericness principles is not the first time that the concept has arisen during this litigation. The Court granted (with leave to amend) Spicely's motion to dismiss Morton's trade dress infringement claim for failure to assert the defense of genericness:

> A plaintiff "has the burden of proof in an unregistered mark case on the issue of genericness of the asserted mark in issue." *Intel Corp. v. Advanced Micro Devices, Inc.*, 756 F. Supp. 1292, 1295 (N.D. Cal. 1991); *see also Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). Because Plaintiff has admitted that its trade dress is unregistered, Dkt. No. 21 ¶ 22, its failure to plead that its trade dress is not generic also causes its trade dress infringement claim under the Lanham Act to fail.

Dkt. No. 55 at 10–11 ("MTD Order"). Morton subsequently amended its complaint to assert that its trade dress was "not generic." SAC ¶ 15.

Later, in the course of denying Spicely's motion for summary judgment, the Court rejected Spicely's argument that Morton could not show that its asserted trade dress was non-generic. Dkt. No. 89 ("MSJ Order") at 12–15. However, the Court only did so after noting that Spicely's argument relied on the test for inherent distinctiveness from *Two Pesos, Inc. v. Taco Cabana, Inc.*,

---

[1] During the June 15, 2017 pretrial conference, Spicely's counsel alluded to *Talking Rain Beverage Co Inc. v. South Beach Beverage Co.*, 349 F.3d 601 (9th Cir. 2003), when asked for the "best case" supporting its argument. *See* Dkt. No. 138 at 27:12–28:11. In *Talking Rain*, the Ninth Circuit held that the plaintiff's trademarked bottle design was functional. 349 F.3d at 602. That opinion contains no discussion of the distinction between product-design and product-packaging trade dress.

3

505 U.S. 763, 768–69 (1992). MSJ Order at 12. The Court agreed with the trend, where the asserted trade dress involves product packaging or containers, to instead adopt the test for inherent distinctiveness from *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977). MSJ Order at 12. Nevertheless, in an abundance of caution, the Court addressed Spicely's argument, given that the Ninth Circuit briefly referenced genericness in the context of assessing the distinctiveness of trade dress. *Id.* at 12–15 (discussing *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042 (9th Cir. 1998)).[2]

Spicely contends that the issue for the jury is whether Morton's asserted trade dress "is (a) distinctive; (b) descriptive; or (c) generic for spice jars." JPCS at 7. Thus, Spicely is arguing that the jury should be instructed according to the *Two Pesos* test, despite this being a product-packaging trade dress case.[3] As described in the Court's prior order, that test was developed in the context of trademarks:

> Trademarks are often classified in the following categories of generally increasing distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* at 768. At the other end of the spectrum, "generic" marks—which "refer to the genus of which the particular product is a species"—cannot be protected. *Id.* at 768 (internal quotations marks, brackets, and citations omitted). In between these two poles, "descriptive" marks, while not inherently distinctive, may nonetheless "acquire" the requisite distinctiveness for protection (i.e., "secondary meaning"). *Id.* at 769.

*See* MSJ Order at 9–10.

The Court reaffirms its view that the *Seabrook* test is better suited to assess inherent distinctiveness in product-packaging trade dress cases:

> The Supreme Court has not held, however, that this [*Two Pesos*] spectrum of categories created for word marks applies to product-

---

[2] Neither of the cases cited in the dismissal order mentions genericness in the context of product-packaging trade dress. *See* MTD Order at 10–11 (citing *Intel*, 756 F. Supp. at 1295; *Filipino*, 198 F.3d at 1146). And while the Court addressed *Kendall-Jackson* in the alternative, that case did not address the *Seabrook* test, much less require the jury to make a factual finding regarding genericness even when given instructions under the *Seabrook* test. *See* MSJ Order at 12–15; *Kendall-Jackson*, 150 F.3d at 1049–51.

[3] In contrast, when moving for summary judgment, Spicely agreed that the *Seabrook* test applied. *See* Dkt. No. 66 at 19.

4

> packaging trade dress, which typically involves shapes and images. Driven by the increasing recognition that the word-mark spectrum of distinctiveness may not be helpful for assessing the inherent distinctiveness of non-word trade dress, courts now widely follow the test of inherent distinctiveness for non-verbal symbols adopted in *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977) ("*Seabrook* test"). *See* J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 8:13 (4th ed.) (updated March 2017) (collecting cases applying the *Seabrook* test). In addition, the Ninth Circuit's Manual of Model Civil Jury Instructions suggests that, in product-packaging trade dress cases, "the court [might] consider the propriety of giving an instruction using the test in *Seabrook*" instead of engaging in likely necessary modification of the model jury instructions based upon the *Two Pesos* analysis. *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* 311 (2007 ed.) (updated March 2017). The Court agrees that "the *Seabrook* test is by far the preferable test to classify inherently distinctive trade dress in packaging and containers." *See* McCarthy, *supra* § 8:13 (describing the test's advantages).

*Id.* at 9. Therefore, the Court finds that, consistent with the Ninth Circuit's model jury instructions, the jury should be instructed on inherent distinctiveness according to the *Seabrook* test, not the *Two Pesos* test. *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* 311 (2007 ed.) (updated July 2017); *see also* MSJ order at 11 & n.10 (describing typical application of *Seabrook* test); *Fiji*, 741 F. Supp. 2d at 1176 (applying *Seabrook* test to assess whether FIJI's water packaging was inherently distinctive).[4]

**IT IS SO ORDERED.**

Dated: 8/25/2017

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] To the extent that Spicely is arguing that, despite receiving an instruction based on the *Seabrook* test, the jury must also receive an instruction regarding genericness, Spicely has cited no case requiring the Court to give confusing and overlapping instructions of this sort.