UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTON & BASSETT, LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>ORGANIC SPICES, INC.,<br><br>   Defendant. | Case No. 15-cv-01849-HSG<br><br>**ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART THE MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 97–100, 102–106, 109-5 |

Plaintiff Morton Bassett L.P. ("Morton") and Defendant Organic Spices, Inc. ("Spicely") each have filed five motions in limine. Dkt. Nos. 97–100, 102–06, 109-5. At the pretrial conference on June 15, 2017, the Court heard argument on the motions. Dkt. No. 138 ("Hr'g Tr.") at 16:16–17:6, 35:17–54:10. The Court **GRANTS** in part, **DENIES** in part, and **DEFERS** in part the motions in limine.

## I. RULINGS FROM THE BENCH

At the pretrial conference, the Court ruled as follows for the reasons stated on the record:

| Motion in Limine | Dkt. No. | Court's Ruling | Hr'g Tr. Citation |
|---|---|---|---|
| Morton's Fourth | 99 | Denied as unnecessary. | 37:20–38:7. |
| Spicely's First | 102 | Denied as untimely motion for summary judgment. | 16:16–17:6, 35:22–24.[1] |
| Spicely's Fourth | 105 | Denied as untimely motion for summary judgment. | 16:16–17:6, 36:16–19.[2] |

The Court now turns to the motions in limine that remain pending.

## II. MORTON'S FIRST MOTION IN LIMINE

Morton's First Motion in Limine seeks to "preclude evidence of, reference to, or argument

---

[1] *See also* Civil Pretrial & Trial Standing Order ¶ 24 ("Motions in limine cannot be used to request summary judgment . . . unless the Court has specifically granted prior approval.").
[2] *See also id.*

regarding settlement communications between counsel for [Morton] and counsel for [Spicely] prior to [Spicely's] filing of this case." Dkt. No. 100. The asserted grounds for exclusion are Federal Rule of Evidence ("FRE") 403 and FRE 408. *Id.* Spicely does not dispute that the communications in question were settlement communications, but argues that they should not be excluded under either FRE 403 or FRE 408. Dkt. No. 123.

### A. Facts

Prior to the filing of this case, counsel for the parties engaged in various settlement communications from February to May 2014, as described below.

#### i. February 25, 2014 Letter from Spicely's Counsel

On February 25, 2014, Spicely's counsel sent a letter to Morton's counsel. Dkt. No. 100, Ex. A.[3] The letter listed four prior communications: three letters exchanged by Morton's counsel and Spicely's counsel, dated between February 12 and February 19, 2014, as well as a phone call between Morton's counsel and Spicely's counsel on February 19, 2014. *Id.* at 1.

The February 25 letter stated that Spicely was "convinced that there is no trade dress infringement and no likelihood of consumer confusion between the Morton . . . jar and the Spicely jar that were pictured in the . . . February 12 Letter [from Morton's counsel to Spicely's counsel]." *Id.* After making supporting arguments, the February 25 letter noted that Spicely had "been contemplating redesigning [its] product package to a more modern look" and attached samples of the preliminary designs. *Id.* at 3. Spicely stated its willingness to provide the "final new design" within a couple of weeks. *Id.* Finally, Spicely made the following offer:

> Subject to exhausting sales of the Spicely Jar existing in our inventories (including containers that are already printed with the existing design) within the next six (6) months, our client is willing to discontinue sales of the Spicely Jar in its existing design and implement the final new design. We hope this amicably concludes this matter.

*Id.*

#### ii. March 12, 2014 Letter from Spicely's Counsel

On March 12, 2014, Spicely's counsel sent a short letter to Morton's counsel, enclosing

---

[3] The letter was marked as a settlement communication. *See* Dkt. No. 100, Ex. A ("FOR SETTLEMENT PURPOSES ONLY[.] SUBJECT TO FRE 408[.]").

2

"images of the sample final new product package design." *Id.*, Ex. C.[4]

### iii. March 12, 2014 Letter from Morton's Counsel

Also on March 12, 2014, Morton's counsel responded to the February 25 letter. *Id.*, Ex. B. The letter "strongly disagree[d]" with the statements regarding infringement and consumer confusion, but stated that Morton was "encouraged that Spicely is prepared to discontinue its use of the Spicely Jar." *Id.* at 1. The letter stated that Morton would only consider the matter resolved if Spicely agreed to "immediately cease all advertising, sales, and distribution of the Spicely Jar." *Id.* Morton's counsel also "enclosed a draft complaint that we are prepared to finalize and file if we do not receive [Spicely's] written agreement to immediately and permanently cease all use of the Spicely jar." *Id.* at 1–2.

### iv. March 17, 2014 Letter from Spicely's Counsel

On March 17, 2014 Spicely's counsel responded to the March 12 letter from Morton's counsel. *Id.*, Ex. D. Spicely's counsel stated that "Spicely will do everything reasonably possible to transition its design from its old design to its new design by June 16, 2014," but stated that "[f]ull commercial implementation of the new design is an entirely different matter." *Id.* at 1. He warned that "[a]ny attempt to try to compel [Spicely] to make a transition any quicker would be ill advised." *Id.* He contended that Morton's product packaging was "generic in shape and overall trade dress," and that "[e]ven if [Morton] were able to prove distinctive trade dress, it would not be entitled to any form of injunctive relief that would hasten Spicely's transition to a new design." *Id.* at 1–2.

### v. March 28, 2014 Letter from Morton's Counsel

On March 28, 2014, Morton's counsel responded to the March 17 letter. *Id.*, Ex. E. He stated that "[w]hile Morton . . . remains encouraged that Spicely will be discontinuing its infringing Spicely Jar, it is not willing to allow Spicely three additional months to continue using [Morton's] distinctive trade dress." *Id.* at 1. Nonetheless, he stated that Morton was "hopeful that the dispute can be resolved amicably, and out of court. It is willing to provide Spicely until no

---

[4] The March 12 letter from Spicely's counsel contained the same settlement communication marking as the February 25 letter. *See id.*, Ex. C.

3

later than May 1, 2014 to exhaust all remaining inventory of the Spicely Jar, and to discontinue producing, selling, distributing, and advertising it." *Id.* at 1.

Finally, the letter requested that Spicely enter into a written settlement agreement:

> In order to complete this matter, we will need Spicely to enter into a written agreement promising to cease all use of the Spicely Jar by May 1, 2014. Attached is an agreement for you to review. If Spicely agrees to these terms, please have its principal sign and date it, and we will return a fully signed copy, and forebear from filing suit. We would appreciate a response by no later than Wednesday, April 2, 2014.

*Id.*

### vi. April 3, 2014 Letter from Spicely's Counsel

On April 3, 2014, Spicely's counsel responded to the March 28 letter. *Id.*, Ex. F. He stated that Spicely "will advance its transition to a new jar design to May 30, 2014. *Id.* at 1. He went on:

> That means that, as of that date, it will not produce, sell or advertise the old label design (as represented on Exhibit B of your proposed settlement agreement). The old design will also be removed from Spicely's web site. Spicely has no control over independent distributors and retailers who have their own inventory of spice jars under the old design. Spicely makes no representation as to them.

*Id.* He contended that a preliminary injunction would not provide any earlier relief. *Id.* Finally, he communicated Spicely's rejection of the draft settlement agreement: "I have reviewed the draft settlement agreement. It is unacceptable. Spicely will proceed without it." *Id.* at 2.

### vii. May 12, 2014 Letter from Morton's Counsel

On May 12, 2014, Morton's counsel responded to the April 3 letter. *Id.*, Ex. G. Given Spicely's refusal to enter into the proposed settlement agreement, he stated that "we intend to continue monitoring the situation to ensure that Spicely ceases all use of the Spicely Trade Dress by May 30, 2014, and to ensure [Morton's] intellectual property rights in its distinctive trade dress remain protected and are not violated in the future." *Id.* at 1.

Finally, Morton's counsel closed with a series of disclaimers:

> Please be advised that Morton . . . reserves all rights, including its rights with respect to the Morton . . . trade dress and any claims related to Spicely's past, present or future jar designs, including but not limited to any confusion that may result from the [new jar design].

> This letter is made without prejudice to any rights or remedies that are available to Morton . . ., and nothing contained herein should be deemed a waiver, admission, or license by it. Morton . . . expressly reserves its right to assert any other factual or legal positions as additional facts come to light, or as circumstances warrant, and pursue and recover damages, profits, and costs.

*Id.* at 1. Morton's counsel attached exhibits of the old and new Spicely jar designs. *Id.* at 2–7.

### B. Analysis

As a threshold issue, the Court addresses at what stage of the proceedings these settlement communications will be offered. Morton's First Motion in Limine asserts that "[a]mong other things, [Spicely] claims these settlement communications are evidence that [Morton] acquiesced in [Spicely's] change to its product packaging and should be equitably estopped from pursuing its trade dress claim." Dkt. No. 100 at 1; *see also id.* at 4 ("[Spicely] has stated on several occasions that the settlement communications evidence [Morton's] acquiescence in [Spicely's] proposed change to its packaging and constitute a waiver or support equitable estoppel."). For its part, Spicely contends:

> [T]he settlement communications may be used by Spicely or Morton . . . (1) to provide context for why Spicely made changes to its label design when it made them, (2) to explain what happened after the Cease and Desist letter, which Morton . . . wants to include for purposes of showing knowledge and willful infringement, (3) to defend against willful infringement and show good faith efforts to comply, (4) for the Court to analyze promissory estoppel and equitable estoppel, and [sic] (4) for Spicely to argue that Versions 3 and subsequent versions (e.g., Version 4) were with [Morton's] consent, or for the jury to analyze the disputed fact as to whether Morton . . . consented to Version 3, and/or whether it was reasonable for Spicely to believe there was consent, or not.

Dkt. No. 123 at 2–3 (internal citation omitted); *see also id.* at 4 ("The settlement negotiations will be used for the limited purpose of proving its estoppel and consent defenses to negate any inference that its conduct was unreasonable in light of the circumstances."); Dkt. No. 102 (Spicely's First Motion in Limine: discussing settlement communications in context of estoppel).

Synthesizing these various statements, the Court understands the settlement communications may be proffered for admission as to several issues, none of which need to be decided during the upcoming jury trial. First, the settlement communications may be offered in support of Spicely's assertion of equitable estoppel. *See* Spicely's Answer to Morton's Second Amended Complaint, Dkt. No. 64 ("Answer") at 7 (asserting estoppel defense). "Estoppel is an

5

equitable defense that the court, not the jury, must decide." *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 686 F. App'x 422, 425 (9th Cir. 2017)[5] (citing *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("The doctrine of equitable estoppel is pre-eminently the creature of equity." (internal quotation marks omitted))); *see also* Hr'g Tr. at 14:25–15:3 ("**THE COURT:** . . . On the estoppel question, we've all determined already that that's an issue for the Court that would be handled after trial anyway. [¶] **MR. ANDRIS:** Correct.").[6]

Second, the settlement communications may be offered in support of Spicely's assertion of waiver. *See* Answer at 7 (asserting waiver defense). Waiver is also an equitable defense. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 n.6 (9th Cir. 2004); *Reliance Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 102 F. App'x 539, 542 (9th Cir. 2004); *Hall v. Johnston*, 758 F.2d 421, 422 (9th Cir. 1985); *W. Fed. Corp. v. Erickson*, 739 F.2d 1439, 1443 n.5 (9th Cir. 1984).

Third, to the extent that Spicely is arguing that the settlement communications may be offered to prove consent and thus negate an element of Morton's claim, this purpose falls squarely within the prohibition of FRE 408(a). *See* Dkt. No. 123 at 5 ("[A]s an element of infringement, Morton . . . must show Spicely did not have [Morton's] consent, and that is exactly what the documents and information purport to show . . . ."); *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* 299 (2007 ed.) (updated July 2017) (listing lack of consent as part of the fourth element of a trade dress infringement claim); FRE 408(a) (prohibiting the introduction of settlement communications, *inter alia*, to "disprove the validity . . . of a disputed claim"); *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) ("The text of the rule is clear . . . .").

---

[5] *Unicolors* and the other unpublished Ninth Circuit decisions cited in this order are not precedent, but may be considered for their persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.
[6] The reference in Spicely's opposition to *promissory* estoppel does not change this conclusion. *See* Dkt. No. 123 at 3–4. Promissory estoppel is asserted as a cause of action. *See Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir. 2001) ("Promissory estoppel is used to create a cause of action . . . ."); *see also Dowie v. Fleishman-Hillard Inc.*, 422 F. App'x 627, 630 (9th Cir. 2011) ("[T]o to support a claim for promissory estoppel under California law, a plaintiff must allege an injury resulting from his reliance on a defendant's promise."). Spicely's operative answer includes counterclaims only for declaratory judgment, not promissory estoppel. Answer at 12–13.

Fourth, the settlement communications may be offered to rebut Morton's claim that Spicely's trade dress infringement was "willful," which may arise in several contexts. If Morton prevails on its trade dress claim, then it will seek to recover "unjust enrichment in the form of disgorgement of Spicely's profits attributable to sales of its goods using the infringing trade dress," *see* Joint Pretrial Conference Statement, Dkt. No. 122 ("JPCS") at 2, which would require a finding of willfulness, *see Stone Creek, Inc. v. Omnia Italian Design, Inc.*, --- F.3d ---, No. 15-17418, 2017 WL 3724419, at *10–12 (9th Cir. July 11, 2017) (finding willfulness is still required for disgorgement of profits under the remedies provision of the Lanham Act, 15 U.S.C. § 1117(a)). However, the Court will not submit this issue to the jury, given that the Court may determine the appropriateness of disgorgement of profits under § 1117(a) following a jury finding of infringement under § 1125(a). *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074–76 (9th Cir.), *cert. denied*, 136 S. Ct. 410 (2015). And while willfulness used to be an explicit factor that could support an award of attorney fees under § 1117(a), that is no longer the case. *See* 15 U.S.C. § 1117(a) ("The Court in exceptional cases may award reasonable attorney fees to the prevailing party."); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (describing historical test: "We have required that a plaintiff show that a defendant engaged in malicious, fraudulent, deliberate or *willful* infringement." (internal quotation marks omitted) (emphasis added)); *id.* at 1180–81 (adopting the totality-of-circumstances test from *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which does not explicitly include willfulness). Regardless, any request for attorney fees would be presented as a post-trial motion.

Fifth, the Court addresses an issue that might at first blush seem appropriate for the jury, but upon further consideration is not. If Morton prevails on its common-law passing off and unfair competition claim, it will seek punitive damages. JPCS at 3; *see also* Dkt. No. 62 ("SAC") ¶¶ 43–46 (asserting common-law passing off and unfair competition claim); *id.* at 14 (seeking judgment for "punitive damages under state law as appropriate"). Morton has suggested that recovering punitive damages would involve a showing willfulness. *See* Tr. of Proceedings, Aug. 8, 2017, Dkt. No. 145 ("CMC Tr.") at 8:13–15 ("[W]illful infringement . . . would implicate

7

punitive damages . . . ."). Nevertheless, the Court will not allow the settlement communications to be presented to the jury whether or not Morton prevails on its common-law passing off and unfair competition claim. Even if the Court were to find that introducing the settlement communications in support of Morton's request for punitive damages could fall under the "another purpose" exception of FRE 408(b), the Court would nonetheless exclude them under FRE 403 because any probative value would be substantially outweighed by the danger of confusion of issues and wasting time. Opening the Pandora's Box of the parties' settlement communications (which go beyond the specific communications attached to Morton's motion) would involve engaging in a separate mini-trial that would take an inordinate amount of time and muddy the issues to be decided by the jury. *See* Dkt. No. 100 at 5 ("The parties would have to devote time to explaining the context of the settlement discussions, why certain positions were taken in settlement negotiations, and why other positions were not. . . . *This would essentially be a mini-trial of the parties' settlement negotiations and the parties' true views of the merits.*" (emphasis added)). Relative to Morton's trade dress infringement claim, the common-law passing off and unfair competition claim will be of minor importance at trial. *See generally* JPCS. Consequently, it would be extremely inefficient to conduct a separate mini-trial regarding evidence that would otherwise not need to go to the jury.[7]

Relatedly, the Court reaches the same holding regarding Morton's cease-and-desist letter under FRE 403. Introducing the cease-and-desist letter alone would confuse the jury and unfairly prejudice Spicely, whereas introducing it along with the whole gamut of settlement communications would require an inordinate amount of time and confuse the issues. These serious problems would substantially outweigh the probative value of the letter.

Accordingly, the Court **GRANTS** Morton's First Motion in Limine.

### III. MORTON'S SECOND MOTION IN LIMINE

Morton's Second Motion in Limine seeks, pursuant to FRE 403, to bar Spicely "from

---

[7] Given that it is Morton which seeks to exclude the settlement communications, it presumably agrees those communications are not necessary to prove its punitive damages claim.

8

presenting testimony or argument that mischaracterizes statements in [Morton's] answer to the effect that glass jars may assist consumers in determining the quality of certain spice products contained inside as an admission that the glass jar feature is legally functional or that [Morton's] trade dress is legally functional." Dkt. No. 97 at 1. In opposition, Spicely states that it seeks to introduce admissions from certain paragraphs of Morton's answer to Spicely's Amended Counterclaims. Dkt. No. 124 at 4–5. In the joint pretrial conference statement, Morton objects to the introduction of these and other paragraphs of Morton's answer. JPCS at 26–28; *see also* Hr'g Tr. at 33:8–36:16 (discussing introduction of Morton's answer). But at the pretrial conference, Spicely speculated that it may instead pursue a stipulation that would obviate the disagreement regarding the introduction of portions of Morton's answer. Hr'g Tr. at 33:1–16.

To the extent that Morton's motion seeks to prevent Spicely from introducing into evidence portions of Morton's answer, it is not clear whether Spicely seeks to do so or not. Therefore, the Court defers any ruling on that narrow issue. To the extent that the motion seeks to more broadly preclude any "testimony or argument that mischaracterizes statements in [Morton's] answer," that issue is not articulated coherently, and denial is therefore appropriate. *See* Hr'g Tr. at 37:7–8 ("I don't understand what I'm being asked to exclude, and I'm inclined to deny on that basis.").

Accordingly, Morton's Second Motion in Limine is **DENIED** in part. At the final pretrial conference on September 5, 2017, Spicely's counsel must be prepared to state definitively whether it will seek to introduce portions of Morton's answer at trial.

**IV. MORTON'S THIRD MOTION IN LIMINE**

Morton's Third Motion in Limine seeks to "preclude evidence of, reference to, or argument regarding any communications between [Spicely] and its counsel regarding [Morton's] 'cease and desist' letter, steps to avoid litigation with [Morton], and the ensuing settlement communications between [Morton's] counsel and [Spicely's] counsel." Dkt. No. 98 at 1.[8]

---

[8] The conclusion of the motion states the requested relief more broadly. *See* Dkt. No. 98 at 5 ("[T]he Court should preclude evidence of, reference to, or argument regarding the parties' settlement communications."). However, the body of the motion and the language of the proposed order both make clear that the motion only relates to the communications between Spicely and its

9

Morton argues that these attorney-client communications should be excluded because (1) Spicely has "waived the advice of counsel defense," and (2) allowing Spicely to introduce these communications "will cause significant delay." *Id.* at 1. In opposition, Spicely states that it "is not asserting a[n] advice of counsel defense or otherwise seeking to rely on correspondence between Spicely and its counsel." Dkt. No. 125 at 1; *see also* Hr'g Tr. at 37:16–18 (confirming that Spicely is not "planning to introduce any of its internal communications"). As stated from the bench, the Court does not "perceive [Spicely] to be presenting anything like an advice-of-counsel defense or trying to put in [its] internal [attorney-client] communications." *See* Hr'g Tr. at 51:18–20.

At the pretrial conference, Morton argued that the motion must be addressed because Spicely plans to introduce communications exchanged with its counsel "when they heard about the . . . cease-and-desist letter or when they were thinking about making changes to the packaging." *See id.* at 49:19–23. However, the Court has now found that neither the cease-and-desist letter nor the other settlement communications will be introduced during the upcoming jury trial. And the argument that Spicely will introduce attorney-client communications regarding possible changes to its product packaging is speculative and contrary to Spicely's repeated statements that it does not plan to introduce any of its attorney-client communications. Therefore, the motion is **DENIED** without prejudice to renewal if and when an issue actually arises.

## V. MORTON'S FIFTH MOTION IN LIMINE

Morton's Fifth Motion in Limine ambiguously seeks to exclude to some extent the testimony and report prepared by Spicely's expert, Michael Rappeport. Dkt. No. 109-5. Morton's expert, Robert Klein, prepared a report presenting the results of two surveys that he conducted to measure the likelihood of confusion between the product packaging of Morton and Spicely. *Id.*, Ex. A at 3. Spicely commissioned Dr. Rappeport "to comment on the Klein Report." *Id.*, Ex. B ("Rapp. Rep.") at 1. He did not prepare a rebuttal survey.

In assessing the admissibility of expert testimony under FRE 702, the Ninth Circuit has

---

counsel. *See id.* at 1–4; Dkt. No. 98-1.

10

explained that "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (internal quotation marks omitted). Similarly, "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.* (internal quotation marks omitted). Accordingly, the Ninth Circuit has repeatedly reaffirmed that "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Id.* (emphasis in original); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. Experts interpret and analyze factual evidence. They do not testify about the law." (internal quotation marks omitted)); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) (upholding district court's exclusion of expert legal opinion as "utterly unhelpful").

Here, Dr. Rappeport asserts that "if a survey shows confusion due to an element of trade dress that is not itself legally protectable, that confusion is, essentially by definition, not evidence of infringement." Rapp. Rep. at 3. Next, he espouses his legal opinion as to whether particular elements of Morton's asserted dress are protectable:

> 12. For what reasons can an element of a trade dress be non-protectable?
> There are at least two reasons why an element of a given trade dress may be non-protectable; namely the element may be generic and/or it may be functional. An element that is generic is not protectable by definition, since generic trade dress is essentially defined as being open to use by everyone. An element that is functional may be protectable, but if so that protection will normally come from patent law, not trademark law.
>
> 13. Are there element(s) among the five in the Klein Report that is (are) not protectable?
> . . . It is arguable that several of these elements do not meet the standards necessary to be protectable. But it seems unarguable that one critical element fails to meet the standards, and indeed does so in more than one way. That element is the see through nature of the clear round glass container.
>
> . . .
>
> 18. Is clear glass by itself protectable?
> The clear glass used in the packaging fails both the functionality test and generic test, and in my opinion is clearly not by itself protectable.

*Id.* at 3–5. As reflected by these excerpts and the report as a whole, Dr. Rappeport states his legal

11

conclusions about ultimate issues of law, which is impermissible under longstanding Ninth Circuit precedent. *See Nationwide*, 523 F.3d at 1058; *Crow Tribe*, 87 F.3d at 1045; *Aguilar*, 966 F.2d at 447; *see also* Hr'g Tr. at 41:8–11 ("Your expert essentially is trying to testify as to whether the elements are protectable or not, which is the ultimate issue before the jury as a matter of law.").

Consequently, the Court **GRANTS** Morton's Fifth Motion in Limine.

## VI. SPICELY'S SECOND MOTION IN LIMINE

Spicely's Second Motion in Limine ambiguously seeks to exclude to some extent the testimony of Morton's likelihood-of-confusion expert, Robert Klein. *Compare* Dkt. No. 103 at 1 (seeking exclusion of "any expert testimony or opinion *beyond what is included in his expert report and contained in the consumer survey*" (emphasis added)) *with id.* at 5 ("Klein's testimony, opinion, argument, and conclusion must be excluded for failure to show support in his report for his position."). The asserted ground for the motion is that while Mr. Klein's survey only compared a single version of each company's product packaging (despite each company having used several different versions of product packaging), he nevertheless asserted likelihood-of-confusion conclusions regarding each company's "products" in general. *Id.* at 1–2.

The Court finds that exclusion of Mr. Klein's testimony under FRE 702 is not warranted. As a threshold issue, the Court cannot adequately ascertain the requested relief, due to Spicely's contradictory statements. Moreover, the asserted deficiencies in the survey's methodology do not justify exclusion: the Ninth Circuit has repeatedly "made clear that technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (internal quotation marks omitted) (reversing district court's exclusion of expert survey); *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (reversing order excluding survey and explaining that "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility."); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264 (9th Cir. 2001) ("[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for the jury . . . ." (citation

12

omitted)).

Thus, the Court **DENIES** Spicely's Second Motion in Limine.

## VII. SPICELY'S THIRD MOTION IN LIMINE

Spicely's Third Motion in Limine seeks to exclude Morton's expert John V.O. Kennard from testifying at trial. Dkt. No. 104. Spicely argues that his testimony must be excluded under FRE 702 because it is neither relevant nor reliable. *Id.* at 4–5. In addition, Spicely contends that his testimony should be excluded as prejudicial under FRE 403. *Id.* at 5.[9]

> FRE 702 governs the admission of testimony by expert witnesses:
> > A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. For expert testimony to be admissible, the expert must be qualified, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004), and the expert's testimony must be "both relevant and reliable," *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal marks omitted); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Rule 702 contemplates a *broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1015 (internal quotation marks omitted) (emphasis in original). "Relevancy simply requires that the evidence logically advance a material aspect of the party's case." *AstenJohnson*, 740 F.3d at 463 (internal quotation marks and ellipses omitted). Finally, reliability requires the expert's testimony to have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal quotation marks and brackets omitted). While the Supreme Court has suggested certain factors that may be considered, the reliability inquiry is ultimately "flexible" and the trial judge

---

[9] Spicely cites several other supposed grounds for exclusion in the motion's introduction but only addresses FRE 403 and FRE 702 in its argument. *Compare* Dkt. No. 104 at 1 *with id.* at 4–5. The introduction also contains an incomplete summary of the motion's argument. Dkt. No. 104 at 1 (arguing that the report is "not based on any scientific theories, testable methodologies, or [missing word]").

13

has "broad latitude" to determine what measures of reliability are appropriate in a given case. *AstenJohnson*, 740 F.3d at 463. Applying these standards after careful review of Mr. Kennard's report, curriculum vitae, and experience as an expert witness, *see* Dkt. No. 104-2, the Court finds that he is qualified and that his testimony meets the reliability and relevance requirements.

Nonetheless, the Court bars Mr. Kennard from testifying that, under Philip Kotler's theory of competitive market strategies, Morton is a "successful market niche leader" and Spicely is a "follower to a niche market leader." *See, e.g.*, Dkt. No. 104-2 at 26; *see also id.* at 29 ("Instead of following a legitimate strategy of a Follower-Adaptor, Spicely chose a strategy of Follower-Cloner."). To the extent that this testimony is relevant (a proposition as to which the Court is skeptical), it should nonetheless be excluded because any probative value is substantially outweighed by the risk of unfair prejudice flowing from the witness' characterization of the motives and relative merits of the parties themselves. *See* Fed. R. Evid. 403; Hr'g Tr. at 12–13 (describing such testimony as "just bolstering of plaintiff's theory of who is the innovator and who is the copier"); *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) ("[A]dmissibility of expert opinion testimony generally turns on . . . preliminary question of law determinations by the trial judge under FRE 104(a) [including] . . . whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time [under FRE 403].").

## VIII.  SPICELY'S FIFTH MOTIN IN LIMINE

Spicely's Fifth Motion in Limine seeks to bar Morton "from producing any evidence or expert testimony that was withheld or produced after the close of discovery and expert discovery." Dkt. No. 106 at 2. At the pretrial conference, the Court held that "without more, [this] sort of blanket advance request is not ripe." Hr'g Tr. at 36:20–21. However, the Court ordered Morton to file a "detailed offer of proof on the question of instances of confusion." *Id.* at 36:23–24. Morton filed its offer of proof, Dkt. No. 136, and Spicely filed its objections thereto, Dkt. No. 142. Subsequently, the Court directed Morton to file a brief regarding the legal basis for the admission of its proffered likelihood-of-confusion evidence, which Spicely will be given the opportunity to oppose. Dkt. No. 149.

As to Spicely's blanket request for exclusion, the Court DENIES the motion without prejudice to Spicely objecting to specific evidence proffered at trial on the ground that it was withheld or produced after the relevant discovery deadline. As to the narrower issue of Morton's likelihood-of-confusion evidence, the Court will decide that issue once the briefing is complete.

Therefore, the Court **DENIES** in part and **DEFERS** in part Spicely's Fifth Motion in Limine.

## IX. CONCLUSION

For the foregoing reasons, the motions in limine are **GRANTED** in part, **DENIED** in part, and **DEFERRED** in part. The parties must meet and confer in light of this order and the Court's recent order regarding priority issues, *see* Dkt. No. 148, and then file their revised pretrial filings, as well as the stipulation described in the Court's order regarding bifurcation, *see* Dkt. No. 139 at 2. The Court will discuss appropriate deadlines for both of these filings at the upcoming pretrial conference on September 5, 2017.

**IT IS SO ORDERED.**

Dated: 9/1/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge